## SOUTHERN RAILWAY COMPANY *v.* DINKINS & DAVIDSON HARDWARE COMPANY.

1. Goods or samples carried for the purpose of use in making sales are not baggage in the ordinary acceptation of that term; but if the carrier accepts such things as baggage with knowledge, express or implied, that they are offered for transportation as baggage, he thereby waives any objection on that ground, and his liability therefor is the same as that with reference to baggage in general.

(a) The terms of the contract between the purchaser of the mileage ticket and the carrier did not inhibit the transportation of sample merchandise as baggage.

2. The transportation of baggage is incidental to the relation of passenger Whether baggage be checked on a trip ticket or mileage ticket, in the absence of any contrary contractual stipulation the passenger is not bound to travel on the same train which carries his baggage, if he uses the mileage or ticket over the same line of the carrier's road, within such a space of time after the checking of the baggage as to indicate that the checking of the baggage and the travel relate to the same journey. But where the carrier and the purchaser of a mileage ticket contract with relation to its purchase that baggage will be transported "only over such lines and between such stations as purchaser of this ticket will travel on date baggage is presented for checking," the contract controls; and if, in violation of the contract, the purchaser of the ticket intentionally fails to travel on the same day with his baggage, and the baggage is lost, the liability of the carrier is that of a gratuitous bailee.

3. A station agent of a carrier who customarily receives and checks baggage has no implied right to receive and check the baggage of the purchaser of a mileage ticket in opposition to the written contract entered into by the purchaser and the carrier in the purchase and sale of the ticket.

4. The custom of other agents of the carrier in receiving and checking

baggage, contrary to the provisions of a contract between the carrier and the purchaser of a ticket, is insufficient to waive the contract where the evidence does not show that the custom of such agents was expressly or impliedly known to and acquiesced in by the governing officials of the carrier.

5. A carrier of passengers may bona fide agree with the purchaser of a ticket on the value of baggage; but a mere general limitation as to value, expressed in a printed form of contract, intended to be applicable to the baggage of all passengers using that form of ticket, though signed by the carrier and the purchaser of the ticket, is not a bona fide agreement as to the value of the particular baggage, and amounts to no more than an arbitrary preadjustment of damages.

JANUARY 23, 1913.

Action for damages. Before Judge Brand. Gwinnett superior court. September 6, 1911.

*John J. Strickland, E. O. Dobbs,* and *D. M. Byrd,* for plaintiff in error.

EVANS, P. J. Dinkins and Davidson Hardware Company brought suit against the Southern Railway Company, to recover the value of a trunk of sample goods which had been checked as baggage by the railway company at the instance of the plaintiff's traveling salesman. The salesman had purchased from the defendant a book containing mileage and baggage coupons, the former entitling the purchaser to travel as a passenger the number of miles represented by the coupons, the latter to be used for the transportation of his baggage. This book was sold and purchased under a written contract between the purchaser and the railroad company, containing this stipulation: "Baggage consisting of wearing apparel will be checked subject to regulation, etc. Baggage not exceeding 150 pounds in weight will be checked free. Baggage weighing in excess to such free allowance will be subject to regular excess charges of carriers over whose lines such baggage is shipped. Baggage liability shall not exceed $100.00 in value. Baggage shall be offered for transportation, and will be transported, only over such lines and between such stations as purchaser of this ticket will travel on date baggage is presented for checking. Merchandise of any description is not considered as baggage, and none of the carriers honoring this ticket are liable in any way for the promptness of [delivery or] condition of any samples which may be carried by the purchasers thereof." The plaintiff's salesman arrived at Roswell, with his trunk of hardware samples, over the defendant's road. He did not remove his samples from the train,

and applied to the agent to check them to Duluth; which the agent did, tearing from the book enough of the baggage coupons as were equivalent to the mileage to Duluth. The salesman at the time had no intention of becoming a passenger on the train to Duluth, his purpose being to make a wagon trip through the country. He did not go to Duluth on the defendant's train on the date his baggage was checked, but went to Atlanta and from that point went to Duluth, but not by defendant's road from Roswell. A few days afterwards he demanded his baggage of the defendant's agent at Duluth, who failed to deliver it. The trunk was found to have been broken open, and the contents stolen or taken therefrom. The plaintiff was given a verdict for the proved value of the contents of the trunk.

1. The mileage book was sold to the salesman as agent of the plaintiff, and the suit is projected on the theory that the salesman sustained to the defendant the relation of passenger, and the gist of the action is the loss of a passenger's baggage. One of the contentions of the defendant is that a trunk of hardware samples is not properly baggage, and is not comprehended in the contract of purchase of the mileage book. By the terms of that contract it is provided that "merchandise of any description is not considered as baggage, and none of the carriers honoring this ticket are liable in any way for the promptness of condition of any samples which may be carried by the purchasers thereof." This clause deals with two matters: the exclusion of merchandise as baggage, and a waiver of liability for promptness of delivery or condition of samples carried. If it was intended to include drummers' samples in the category of merchandise which was not to be considered as baggage at all, why stipulate against liability for the promptness and manner of delivery? We think the parties intended to differentiate between merchandise in the usual acceptation of that term, and the samples of a traveling salesman; and as to the latter the contract did not exclude a trunk containing samples from being considered as baggage.

Is a trunk containing the samples of a traveling salesman classifiable as baggage? The authorities uniformly hold that goods or samples carried for the purpose of making sales are not baggage; but if the carrier accepts such things as baggage with knowledge that they are offered for transportation as baggage, he thereby

waives any objection on that ground, and his liability therefor is the same as that with reference to baggage in general. *Dibble* v. *Brown,* 12 *Ga.* 217 (56 Am. D. 460); 6 Cyc. 668; 4 Elliott on Railroads, § 1649. This waiver may be by an agent whose duty it is to check baggage. The agent of the carrier, whose duty it is to receive and check baggage, has implied authority to bind the carrier by accepting as baggage trunks of traveling salesmen, containing samples, offered by a passenger for transportation, where such agent knows or is presumed to know from the circumstances the contents of the trunk tendered as baggage. And this knowledge may be implied from a general custom of receiving as the baggage of commercial travelers trunks which are generally known to contain sample articles of merchandise belonging, not to the travelers, but to their employers. 3 Hutchinson on Carriers, §§ 1250, 1251.

2. The contract upon the faith of which the mileage ticket was issued provided: "Baggage shall be offered for transportation, and will be transported, only over such lines and between such stations as purchaser of this ticket will travel on date baggage is presented for checking." The defendant contends, as the plaintiff's salesman checked the trunk with no intention of going with it over the line of railway on that day, that no recovery could be had in this action. We will examine into this contention. In Marshall *v.* Pontiac, Oxford & Northern R. Co., 126 Mich. 45 (85 N. W. 242, 55 L. R. A. 650), it was held that one who purchases a railroad ticket for the sole purpose of checking his baggage upon it, with the intention of going to his destination in his private conveyance, can hold the carrier liable only as a gratuitous bailee of the baggage, and can not recover in case of its loss, except the carrier be guilty of gross negligence. The court rested its conclusion upon the reasoning that baggage is a mere incident of the transportation of a passenger, and that no liability can exist for it as baggage if there is no transportation of a passenger upon which to rest such liability. The annotator of the case in the L. R. A. severely criticises the decision, and questions its soundness. Its binding force as an authority based on principle is expressly repudiated in McKibbin *v.* Wis. Cen. Ry. Co., 100 Minn. 270 (110 N. W. 964, 8 L. R. A. (N. S.) 489, 117 Am. St. R. 689). In that case the plaintiff's salesman used a mileage book with substantially the same stipulations as in the instant case; he checked his trunks

at St. Paul, destined to Glenwood, with no intention of going on the same train which carried the trunks, as his purpose was to go to his home in another city, to remain there over Sunday and New Year's day, then return to St. Paul Tuesday morning, and go directly to Glenwood over the defendant's road on his mileage ticket. He did go on Tuesday from St. Paul to Glenwood over the defendant's road. In the meantime his trunks had been burned. The court held, that, in view of modern methods of checking baggage, and the custom of regularly checking on presentation of a ticket at stations and general ticket offices, there is no good reason why a passenger should necessarily go on the same train which carries his baggage; and that the carrier is not, as matter of law, liable only as a gratuitous bailee of baggage which it has regularly checked, if the passenger does not go on the same train with it. From a careful examination of the authorities, and the underlying principles, we deduce the rule to be, that the transportation of baggage is incidental to the relation of passenger; that, whether the baggage is checked on a trip ticket or mileage ticket, in the absence of a contrary contractual stipulation the passenger is not bound to travel on the same train which carries his baggage, if he uses the mileage or ticket over the same line of the carrier's road, within such space of time after the checking of his baggage as to indicate that the checking of the baggage and the travel relate to the same journey. But where the carrier and the purchaser of a ticket contract with relation to the purchase of a mileage ticket that baggage will be transported "only over such lines and between such stations as purchaser of this ticket will travel on date baggage is presented for checking," the contract controls; and if, in violation of the contract, the purchaser of the ticket intentionally fails to travel on the same day with his baggage, and the baggage is lost, the liability of the carrier is that of a gratuitous bailee.

3.  The plaintiff's agent testified that the defendant's agent at Roswell checked his baggage, and tore off the coupons from his mileage ticket with knowledge that he did not intend to travel on the train which carried the trunk. Was the effect of this act of the defendant's agent to waive the requirement of the passenger to travel on the same day he presented his baggage for checking? In dealing with a carrier's agent who customarily receives and

checks baggage, a passenger has the right to assume that he has the requisite authority to make all ordinary and usual arrangements with passengers in respect to the transportation of baggage. But if the purchaser of a ticket knows that the agent is without authority to make the arrangement requested, or if such purchaser has contracted with the carrier against the arrangement which he makes with the agent respecting the transportation of baggage, the act of such agent will not be binding on the carrier. 3 Hutchinson on Carriers, § 1251. The carrier's agent therefore had no authority to waive the contract between his principal and the plaintiff's agent.

4. Two witnesses were allowed to testify that the custom of various agents of the defendant company was to check baggage from one point to another on a mileage book, when the holder of such book was not going to travel on the railroad accompanying his baggage. The testimony did not show that this custom of agents was known to the governing officials of the road, or that it was so extensive as to impute a waiver on the part of the company of its contract. This evidence was prejudicial to the defendant, and its illegal admission requires a new trial.

5. The contract limited the liability for baggage to $100. The undisputed evidence is that this contract was not made for the special instance, but that it is a printed form appearing in all mileage tickets of this form. A carrier of passengers may bona fide agree with the purchaser of a ticket on the value of baggage. *Central Railway Company* v. *Lippman*, 110 *Ga.* 676 (36 S. E. 202, 50 L. R. A. 673). But the same rules respecting contractual limitations of value apply in cases respecting baggage as in contracts. for the transportation of freight. The rule in such cases is: "A railway company in its capacity as a common carrier may, as a basis for fixing its charges and limiting the amount of its corresponding liability, lawfully make with a shipper a contract of affreightment embracing an actual and bona fide agreement as to the value of the property to be transported; and in such case the latter, when loss, damage, or destruction occurs, will be bound by the agreed valuation. But a mere general limitation as to value, expressed in a bill of lading, and amounting to no more than an arbitrary preadjustment of the measure of damages, will not, though the shipper assent in writing to the terms of the document, serve to

exempt a negligent carrier from liability for the true value." *Central of Georgia Railway Company* v. *Hall,* 124 *Ga.* 322 (4), 326 (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170, 4 Ann. Cas. 128). The jury were authorized to find that the contractual limitation as to value was not an actual bona fide agreement as to the value of the property lost, but a mere general limitation as to value, amounting to an arbitrary preadjustment of damages. *Judgment reversed. All the Justices concur.*